UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Lance Phillip Wickner,

           Petitioner,

   vs.                         REPORT AND RECOMMENDATION

Joan Fabian,

           Respondent.        Civ. No. 06-1727 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, under Title 28 U.S.C. §2254, see, Docket No. 1, which alleges that the Petitioner is being illegally detained, by the Respondent, for reasons which violate his rights under the Constitution, laws, or Treaties of the United States.  The Petitioner appears pro se, and the Respondent appears by Kimberly R. Parker, Assistant Minnesota Attorney General.  For reasons which follow, we recommend that the Petition be dismissed with prejudice.  See, Rule 4 of The Rules Governing Section 2254 Cases In The United

States District Courts ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.").

## II.  Factual and Procedural Background

The Petitioner is a State prisoner who is currently confined at the Minnesota Correctional Facility, in Oak Park Heights, Minnesota ("MCF-Oak Park"), pursuant to a conviction for escape from custody, in violation of Minnesota Statutes Section 609.485, Subdivisions 2(1), and 4(1).  See, Petition, supra at p. 1; Memorandum in Support of Petition for Writ of Habeas Corpus, Docket No. 2, at p. 2.

In November of 2000, the Petitioner was released from the Minnesota Correctional Facility, in St. Cloud, Minnesota ("MCF-St. Cloud"), under the intensive-supervised-release program.  See, State v. Wickner, 673 N.W.2d 859, 861 (Minn. App. 2004)("Wickner II").  On his release, the Petitioner was placed in a motel room that had not been modified to allow his electronic monitoring bracelet to fully function, since the base unit would not notify State agents that the Petitioner had exceeded a specific distance from the base unit, or that he had removed the bracelet. Id. On November 9, 2000, the Petitioner's supervising agent, Robert Christie, stopped by the Petitioner's motel room to check on the Petitioner, and determined that the

Petitioner, who was not there, had removed his electronic monitoring bracelet.  Id.  A Warrant was issued for the Petitioner's arrest, but the Petitioner was not immediately located.  Id.

On the morning of November 17, 2000, the Petitioner stole a car.  See, State v. Wickner, 2004 WL 77896 at *1 (Minn. App., January 20, 2004)("Wickner III").  The same night, the Petitioner, and a juvenile, J.A., left a party at which the Petitioner had been drinking.  Id.  The Petitioner subsequently crashed the stolen car into a ditch, where it rolled over, fatally injuring J.A.  Id.  The Petitioner was charged with criminal vehicular homicide, in violation of Minnesota Statutes Section 609.21, Subdivision 1(2)(i), and theft of a motor vehicle, in violation of Minnesota Statutes Section 609.52, Subdivision 2(17).  See, State v. Wickner, 2002 WL 977313 at *1 (Minn. App., May 14, 2002)("Wickner I").  Prior to Trial, the State amended the first Count to a charge of criminal vehicular homicide in a grossly negligent manner, in violation of Minnesota Statutes Section 609.21, Subdivision 1(1), but, when a plea was not forthcoming, the State withdrew that amendment.  Id.  Following his conviction by a Jury on both Counts, the Petitioner was sentenced to an upward departure of 116 months imprisonment.  Id. at *2.  The Petitioner appealed his sentence and conviction, and argued that allowing the State to amend its Complaint

affected an essential element of the charge of criminal vehicular homicide in violation of State law and, on May 14, 2002, the Minnesota Court of Appeals reversed and remanded the case for a new Trial on that charge. Id. at *7.

Prior to the Petitioner's retrial for criminal vehicular homicide, he was tried for escape from lawful custody, in violation of Minnesota Statutes Section 609.485, and was convicted by a Jury. See, Wickner II, supra at 861. The Petitioner was sentenced to a 13-month term of imprisonment that would run consecutively to his sentence for criminal sexual conduct, which had been in effect when he absconded from supervised release. Id.; Wickner III at *1. The Petitioner was subsequently retried on remand, and was convicted of criminal vehicular homicide, for leaving the scene of an accident resulting in death, but he was acquitted of criminal vehicular homicide involving negligent driving while under the influence of alcohol. See, Wickner III, at *2. The Petitioner was again sentenced to 116 months imprisonment, which would run consecutive to his previous sentences. Id.

The Petitioner appealed his escape conviction, and argued that the Trial Court improperly construed Minnesota Statutes Section 609.485, and that the Statute was not applicable to his case because he was on supervised release. See, Wickner II, at

861.[1]  The Petitioner specifically argued that he should have been considered under Subdivision 3 of the Statute, which excludes the Statute's application "to a person who is free on bail or who is on parole or probation, or subject to a stayed sentence or stayed execution of sentence." Id., quoting Minnesota Statutes Section 609.485, Subdivision 3. The Minnesota Court of Appeals rejected the Petitioner's contention, noting that Subdivision 2 provides that "'escapes while held in lawful custody' includes absconding from electronic monitoring or absconding after removing an electronic monitoring device from the person's body." Id., quoting Minnesota Statutes Section 609.485, Subdivision 2.

On appeal, the Petitioner also argued that the State's decision to file the escape from lawful custody charge constituted vindictive prosecution because it followed his successful appeal of the criminal vehicular homicide conviction. Id. at 862-63. The Minnesota Court of Appeals refused to consider the Petitioner's contention, finding

---

[1]The Petitioner also appealed his conviction on retrial for the criminal vehicular homicide charge, and alleged prosecutorial misconduct, that the State District Court erred in allowing evidence that he absconded from electronic custody and stole a vehicle, and that the Court abused its discretion in his sentencing. See, State v. Wickner, 2004 WL 77896 at *1-2 (Minn. App., January 20, 2004)("Wickner III"). However, only the escape conviction is at issue in this matter, and thus, it is sufficient to note, without further exploration, that the Petitioner's criminal vehicular homicide conviction, and sentence, was upheld on appeal. Id. at *7.

that the issue had not been raised at Trial, and therefore, the State had no opportunity to respond to the assertion, but the Court noted that the Petitioner could raise that issue in a post-conviction proceeding.  Id. at 863.   The Petitioner sought review of that decision by the Minnesota Supreme Court, but review was denied on March 30, 2004.  See, Appendix to Respondent's Memorandum, Docket No. 7, at Exhibit 2.

In September of 2004, the Petitioner filed his Petition for post-conviction relief, alleging vindictive prosecution, and ineffective assistance of counsel.  See, Wickner v. State, 2006 WL 163479 at *1 (Minn. App., January 24, 2006)("Wickner IV").  As to the vindictive prosecution claim, the Petitioner argued that the State only charged him with escape after his successful appeal of his criminal vehicular homicide conviction.  Appendix, supra at Exhibit 9, p. 2.  On December 8, 2004, the post-conviction Court denied the Petition.  Id. at p. 1; Wickner IV, supra at *1.

The Petitioner appealed that decision to the Minnesota Court of Appeals, and argued that the State retaliated against him for his successful appeal, effectively punishing him for exercising his statutory right to appeal, and therefore, violated his rights under Due Process.  Wickner IV, supra at *2.  In its decision, the Minnesota Court of Appeals noted that the imposition of additional penalties, in retaliation for a defendant's exercise of legal rights, is impermissible vindictive prosecution.  Id.,

- 6 -

citing <u>United States v. Goodwin</u>, 457 U.S. 368, 372 (1982) and <u>State v. Pettee</u>, 538 N.W.2d 126, 132 (Minn. 1995).  However, the Court determined that the Petitioner had failed to demonstrate a reasonable likelihood of vindictiveness that was sufficient to trigger a presumption of vindictive prosecution.[2] <u>Id.</u> at *3.  The Court held that the Petitioner was not entitled to a presumption of vindictiveness, since "the context of adding an unrelated charge arising from a separate behavioral incident following a successful appeal does not suggest a reasonable likelihood of vindictiveness." <u>Id.</u>  The Petitioner sought review from the Minnesota Supreme Court, which was denied on March 28, 2006.  See, <u>Appendix</u>, supra at Exhibit 1.

On May 9, 2006, the Petitioner commenced this Federal Habeas proceeding, alleging that his prosecution for the escape charge constituted vindictive prosecution under <u>State v. Holmes</u>, 161 N.W.2d 650 (1968).  See, <u>Memorandum in Support</u>, supra at p. 3.  In response, the Respondent requests dismissal of this matter for two reasons: 1) the Petitioner failed to properly present a Federal claim to the Minnesota Supreme Court, and in his Federal Habeas Petition; and 2) the Petitioner's claim fails on its

---

[2]The Petitioner did not offer objective evidence of vindictiveness, but rather, he argued that the Courts should presume vindictiveness in his case.  See, <u>Wickner v. State</u>, 2006 WL 163479 at *3 (Minn. App., January 24, 2006)("<u>Wickner IV</u>").

merits.  See, <u>Memorandum in Opposition to Petition for Writ of Habeas Corpus,</u>
<u>Docket No. 6</u>, pp. 5, and 7.

### III.  Discussion

A.   <u>Exhaustion and Procedural Default</u>.

1.   <u>Standard of Review</u>. It is well-established that a Federal Court will
not entertain a Petition for a Writ of Habeas Corpus on behalf of a State prisoner
unless the prisoner has first exhausted all available State Court remedies.  See, <u>Title</u>
<u>28 U.S.C. §2254(b)</u>; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Rose v.</u>
<u>Lundy</u>, 455 U.S. 509 (1982); see also, <u>Armstrong v. State of Iowa</u>, 418 F.3d 924, 925-
26 (8th Cir. 2005), cert. denied, --- U.S. ---, 126 S. Ct. 1351 (2006)("Federal habeas
relief is available to a petitioner after he 'has exhausted the remedies available in the
courts of the State.'"), quoting <u>Title 18 U.S.C. §2254(b)(1)(A)</u>.  The exhaustion of
State remedies requirement is based on principles of comity and federalism, as its
purpose is to ensure that State Courts are given the first opportunity to correct alleged
Federal constitutional errors raised by State prisoners.  See, <u>O'Sullivan v. Boerckel</u>,
supra at 844; <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Rose v. Lundy</u>, supra
at 518-19; <u>Curtiss v. Mount Pleasant Correctional Facility</u>, 338 F.3d 851, 55 (8th Cir.
2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves

AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting Carey v. Saffold, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a prisoner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court.  See, O'Sullivan v. Boerckel, supra at 845; Duncan v. Henry, supra at 365-66; see also, Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts.  See, Picard v. Connor, 404 U.S. 270, 275 (1971).

To serve the purposes of the rule, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas proceeding.  Id. at 275-76.  The State Court has an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue.  See, Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, --- U.S.

---, 126 S. Ct. 93 (2005), quoting <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 ( 1999); <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996).  Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts.  <u>Id.</u>  "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." <u>Id.</u>; see also, <u>Abdullah v. Groose</u>, supra at 412, citing <u>Duncan v. Henry</u>, supra at 366.

Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." <u>Zenanko v. State</u>, 587 N.W.2d 642, 644-45 (Minn. 1998), quoting <u>State v. Knaffla</u>, 243 N.W.2d 737, 741 (Minn. 1976).  If the Petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, the claim is procedurally defaulted.  See, <u>Sloan v. Delo</u>, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996), citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991).  In addition, if a Petitioner has attempted to raise a claim in State Court, but the State Court determines that the Petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the

- 10 -

claim on Habeas review.  See, Coleman v. Thompson, supra at 750; Sloan v. Delo, supra at 1378.

Accordingly, "[a] default under a state procedural rule bars consideration of a federal claim presented to the state courts if the last state court to review the claim specifically rested its decision on an adequate and independent state ground * * *." Sloan v. Delo, supra at 1378, citing Harris v. Reed, 489 U.S. 255, 260-63 (1989).  A claim that is procedurally defaulted under State law, however, is barred from Federal review only if the State procedural rule is firmly established and regularly followed. See, Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995), cert. denied, 517 U.S. 1124 (1996), citing Ford v. Georgia, 498 U.S. 411, 423-24 (1991); see also, Harris v. Reed, supra at 262 ("[A]n adequate and independent finding of procedural default [as a matter of State law] will bar federal habeas review of the federal claim.").

Although the State Court procedural bar is "nearly absolute," a Petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence.  Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002), quoting Coleman v. Thompson, supra at 750.

2.   <u>Legal Analysis</u>.  Here, the Petitioner alleges only one (1) ground for relief; namely, that his conviction for escape from custody was the product of vindictive prosecution.   See, <u>Petitioner's Memorandum</u>, supra at p. 3.   The Respondent urges us to dismiss this matter on the basis that the Petitioner has failed to properly present a Federal claim or, in the alternative, argues that the Petitioner's claim fails on its merits, since the result reached by the State Courts accords with the precedent of the United States Supreme Court.

We begin our analysis by noting that both the Petition to the Minnesota Supreme Court, and the current Petition for Habeas Corpus relief, cite only to State law cases, without any reference to Federal case law, a Federal constitutional right, or a Federal statutory right.  In his briefing, the Petitioner concedes that he did not expressly disclose to the State Court that his vindictive prosecution claim was a Federal issue, but nonetheless, he asserts that his claim implicates "Due Process, Amendment V of the United States Constitution."[3]   See, <u>Petitioner's Reply</u>

---

[3]"The Due Process Clause of the Fifth Amendment applies to actions of the federal government, while the Fourteenth Amendment applies to actions of the states." <u>Serna v. Goodno</u>, 2005 WL 1324090 at *5 (D. Minn., June 3, 2005), citing <u>Warren v. Gov't Nat'l Mortgage Ass'n</u>, 611 F.2d 1229, 1232 (8th Cir. 1980).  As the Petitioner is not alleging any unlawful action by Federal agents, we construe his Petition liberally to allege a violation of his right to Due Process under the Fourteenth Amendment.

Memorandum, Docket No. 9, at p. 1.  The Petitioner also asserts that the Minnesota Court of Appeals, in rejecting his claim, "appears to rest primarily on federal law and * * * doesn't rely upon any state court decision or rely upon the Minnesota Constitution."  Id. at pp. 3-4.

In his Petition for Review, which was submitted to the Minnesota Supreme Court, the Petitioner argued that the Court of Appeals had failed to consider the prior precedent of the Minnesota Supreme Court; namely, State v. Holmes, supra, along with two (2) other State cases:  State v. Alexander, 290 N.W.2d 745 (Minn. 1980), and State v. Flores, 2002 WL 31891389 at *1 (Minn. App., December 31, 2002).  See, Appendix, supra at Exhibit 7, pp. 3-4.  The crux of the Petitioner's request for review was that the Minnesota Court of Appeals had incorrectly concluded that the Minnesota Courts had not previously addressed the application of a presumption of vindictiveness.  Id. at p. 3.

In State v. Holmes, supra at 296, the Minnesota Supreme Court held that it was improper for a Court to impose upon a defendant a more onerous sentence, after a retrial, than the sentence that was originally imposed.  In so holding, the Court explained that it based its decision "on procedural fairness and principles of public policy rather than on a constitutional ground."  Id. at 300.  In support of his claim, that

- 13 -

he was entitled to a presumption of vindictiveness on the facts of this case, as he alleged it in his Petition to the Minnesota Supreme Court, the Petitioner cited the following passage from State v. Holmes, in full:

> [W]e note by way of dictum that what we now hold with respect to an increased penalty for the same offense may well apply to situations where other charges, known to the prosecution at the time of the first trial, are belatedly added after that appeal and a reversal. * * * The state will have the burden of showing that any additional charges, prosecuted after an appeal has been perfected, did not come to the attention of the authorities in time to be included in the initial prosecution but were subsequently discovered in the course of routine police investigation.

Id. at 304 [Petitioner's ellipses].

In addition to being clearly marked as dictum, the quoted passage does not address a specific Federal law, or Federal constitutional right, but simply suggests a proper delegation of the burden of proof, by the State, in a vindictive prosecution claim. Elsewhere in his Petition to the Minnesota Supreme Court, the Petitioner cites to State v. Flores, and State v. Alexander, in support of his position, that the decision of the State to add new and distinct Counts to its Complaint should be found to be "vindictiveness in fact." Petition, supra at p. 4. Although both of those cases mention the Fourteenth Amendment, as a consideration for a Court in weighing a claim of double jeopardy, neither case bases its holding on a constitutional argument, that

would trigger recognition, by the Minnesota Supreme Court, that the Petitioner was alleging a Due Process claim.

In Baldwin v. Reese, 541 U.S. 27, 30 (2004), the United States Supreme Court addressed the issue of fair presentation, and held that, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court decision, that does so." Id. at 32. While he is not required to have spelled out every nuance of his Federal constitutional claims to the Minnesota Supreme Court, the Petitioner does have to give fair notice that, indeed, there is a Federal constitutional dimension to his claims. See, Duncan v. Henry, supra at 365-66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); Johnson v. State of Minnesota, 2006 WL 2860817 *2-3 (D. Minn., October 4, 2006)(finding procedural default when petitioner cited only one State Court case, and failed to specify what Federal issues were relevant in petition to Minnesota Supreme Court).

The issue now presented is not whether the Petitioner can conjure up a Federal basis for his claim, since he currently is in Federal Court, but rather, whether he fairly

presented, to the Minnesota Supreme Court, the Federal basis for his claim.  Given the

Record presented, we conclude that the Petitioner failed to do so.  Accordingly, his

claim is procedurally defaulted, and we recommend its dismissal.  See, <u>Abdullah v.</u>

<u>Groose</u>, supra at 411.

The Petitioner argues that we should entertain his Petition, notwithstanding his

failure to allege a Federal constitutional violation in his Petition for Review to the

Minnesota Supreme Court, since he cited to two (2) Federal cases, in his brief to the

Minnesota Court of Appeals, and that, therefore, the Court's decision necessarily

relied upon Federal case law.  See, <u>Petitioner's Reply Memorandum</u>, supra at p. 3.

The Petitioner underscores that, in weighing his appeal, the Minnesota Court of

Appeals considered <u>Blackledge v. Perry</u>, 558 U.S. 21 (1974), and <u>Hardwick v.</u>

<u>Doolittle</u>, 558 F.2d 292 (5th Cir. 1977), which demonstrates that the Court "was aware

that the vindictive prosecution claim had federal implications."  <u>Petitioner's Reply</u>

<u>Memorandum</u>, supra at p. 3.

In closely reviewing the Minnesota Court of Appeals' decision in <u>Wickner IV</u>,

we find reference to two (2) Supreme Court decisions -- <u>Blackledge v. Perry</u>, supra,

and <u>United States v. Goodwin</u>, supra at 372 -- as well as several Federal Court of

Appeals' decisions.[4]   In addition, the Court commenced its discussion of the Petitioner's claims by acknowledging that they had constitutional implications. Wickner IV, supra at *1.  However, the holding in Wickner IV was based upon a decision, by the Wisconsin Court of Appeals, in State v. Williams, 677 N.W.2d 691 (Wis. Ct. App. 2004), review denied (Wis., April 20, 2004), and a Minnesota Supreme Court decision -- State v. Herme, 298 N.W.2d 454, 455 (Minn. 1980).  Applying the reasoning of those State Courts, the Court, in Wickner IV, ultimately held that "the postconviction court did not err in concluding that the appellant had not demonstrated a reasonable likelihood of vindictiveness sufficient to trigger the presumption." Wickner IV, supra at *3.

Decisions in this District have repeatedly recognized that a petitioner must raise his Federal claims through the highest available State Court, and cannot expect that his arguments, to inferior Courts, will necessarily be reviewed by that superior Court. See, Schliemann v. Fabian, 2007 WL 495007 at *3 (D. Minn., February 13, 2007)("Moreover, the petitioner's petition, or brief, to the highest available state court must satisfy the fair presentation requirement and the petitioner cannot rely on

---

[4]The Petitioner appears to be mistaken in his claim that the Minnesota Court of Appeals cited to Hardwick v. Doolittle, 558 F.2d 292 (5th Cir. 1977).

materials submitted to intermediate state courts to meet this burden."), citing <u>Baldwin v. Reese</u>, supra at 32; <u>O'Sullivan v. Boerckel</u>, supra at 844-47 (prisoner who fails to present his claims in a Petition for discretionary review to a State Court of last resort has not properly presented his claim to the State Courts); <u>Carney v. Fabian</u>, 441 F. Supp. 2d 1014, 1022 (D. Minn. 2006)(Federal constitutional claim must be presented to highest State Court).  We cannot find, solely on the basis of the decision of the Minnesota Court of Appeals, that the Petitioner fairly presented the Federal nature of his claims to the Minnesota Supreme Court, as is required in order for us to have jurisdiction over his Due Process claim.

A claim that has been procedurally defaulted in the State Courts will not be entertained in a Federal Habeas proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the Federal Court declined to consider the claim.  See, <u>Coleman v. Thompson</u>, supra at 750.  "It is well-established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner can show either cause and prejudice to excuse the default or actual innocence."  <u>Schliemann v. Fabian</u>, supra at *3, citing <u>Clemons v. Leubbers</u>, 381 F.3d 744, 750 (8th

Cir. 2004); <u>Reagan v. Norris</u>, supra at 656; <u>Carney v. Fabian</u>, supra at 1023, citing <u>Coleman v. Thompson</u>, supra at 750.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on **new evidence**, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996)[emphasis added], quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must, instead, offer some new evidence which affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted.

Here, the Petitioner has failed to introduce any **new** evidence that would require us to re-examine his case in order to avoid a fundamental miscarriage of justice, nor has he provided any cause, or prejudice, that would excuse his procedural default. In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the State's highest Court in a timely, and procedurally proper manner. See, <u>Coleman v. Thompson</u>, supra at 753 ("'[C]ause' under the cause and prejudice test is something **external** to the petitioner, something that cannot fairly be attributed to him * * * [f]or example, 'a showing that

- 19 -

the factual or legal basis for a claim was not reasonably available * * * or that some interference by officials made compliance impracticable")[emphasis in original], quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). The Petitioner has not identified any "external cause" that could excuse his failure to present his defaulted claim.

Likewise, the Petitioner cannot satisfy the prejudice requirement, which would require him to show, as follows:

> [T]he alleged misconduct not only created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, thereby infecting the trial with constitutional error * * * [Citation omitted.] The petitioner must also show, at the very least, that absent the alleged constitutional violation, there is a reasonable probability the outcome of the case would have been different.

Nims v. Ault, 251 F.3d 698, 702 (8th Cir. 2001).

While the Petitioner argues that, in Minnesota, the case law on vindictive prosecution is "unsettled," he has not shown that such an unsettled state constitutes affirmative misconduct, or that there is a reasonable probability that the outcome of his case would have been different if the law, in Minnesota, was more clearly settled.

Finally, even if we were to find that the Petitioner's claims were not procedurally defaulted, and therefore, were we to reach the merits of his argument, that "vindictive prosecution * * * is not and has not been a settled issue in Minnesota

courts or in the United States District Court, District of Minnesota," Petitioner's Reply Memorandum, supra at p. 2, we would recommend the dismissal of the Petitioner's claims.  A Writ of Habeas Corpus can only be granted if the State Court's resolution of the claim "cannot reasonably be justified under existing Supreme Court precedent." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), cert. denied, 528 U.S. 1143 (2000).

The Petitioner has never argued that he presented objective evidence of vindictiveness, but rather, he argues that vindictiveness should be presumed, since the prosecutor knew about the escape attempt, before the Petitioner's Trial on the criminal vehicular homicide and theft charges, and yet failed to pursue escape charges until after the Petitioner had successfully challenged his homicide conviction.   See, Wickner IV, supra at *3.   The Supreme Court has found a presumption of prosecutorial vindictiveness in two (2) cases, Blackledge v. Perry, 417 U.S. 21, 27-28 (1974), and Thigpen v. Roberts, 468 U.S. 27, 30-31 (1984), which are easily distinguished from the facts now before us.  Blackledge and Thigpen both involved situations in which a criminal defendant successfully challenged his conviction, and obtained a new Trial, only to find felony charges substituted for the original misdemeanor Complaint.

- 21 -

In contrast, here the new charge related to a completely separate and distinct criminal event, that had taken place over a week earlier.  As our Court of Appeals has recognized, the Supreme Court has closely limited the applications of a presumption of vindictiveness.  In <u>United States v. Beede</u>, 974 F.2d 948, 951 (8th Cir. 1992), cert. denied, 506 U.S. 1067 (1993), the Court explained:

> In Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court held that due process is not violated by a prosecutor carrying out a threat to reindict on a more serious charge if the defendant does not plead guilty to the original charge, as long as there is probable cause to prosecute on the more serious charge.  In [United States v.] Goodwin, [457 U.S. 368 (1982)], the Supreme Court expanded upon Borderkircher and held that no presumption of vindictiveness arises when a defendant refuses to plead to a misdemeanor and requests a jury trial and a new prosecutor reindicts on a felony.  Goodwin, 457 U.S. at 381-84, 102 S.Ct. at 2492-94.  The Goodwin court characterized Bordenkircher as making clear that "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent charges in the charging decision are unjustified."  Goodwin, 457 U.S. at 382-83, 102 S.Ct. at 2493.

> We find this case is governed by the logic of Goodwin.

>> An initial indictment -- from which the prosecutor embarks on a course of plea negotiation -- does not necessarily define the extent of legitimate interest in prosecution.

> For just as a prosecutor may forego legitimate
> charges already brought in an effort to save
> the time and expense of trial, a prosecutor
> may file additional charges if an initial
> expectation that a defendant would plead
> guilty to lesser charges proves unfounded.

Goodwin, 457 U.S. at 380, 102 S.Ct. at 2492 (footnote omitted).

> In refusing to create an inflexible presumption with respect
> to pretrial charging decisions, Goodwin also notes that
> when the initial charging decision is made, "the
> prosecutor's assessment of the proper extent of prosecution
> may not have crystallized." Goodwin, 457 U.S. at 381, 102
> S.Ct. at 2493.

> "A prosecutor should remain free before trial to exercise
> the broad discretion entrusted to him to determine the
> extent of the societal interest in prosecution." Goodwin,
> 457 U.S. at 382, 102 S.Ct. 2493. Additionally, "[a]n initial
> decision should not freeze future conduct." Goodwin, 457
> U.S. at 382, 102 S.Ct. at 2493.

More recently, our Court of Appeals has observed:

> There can be no prosecutorial vindictiveness if the
> prosecutor revised the charge because of newly discovered
> evidence or some objective reason other than to punish the
> defendant for exercising his legal rights. [United States v.]
> Rodgers, 18 F.3d 1425[, 1430 (8th Cir. 1994)](citations
> omitted). We have not interpreted "newly discovered
> evidence" to literally require the evidence to surface **after**
> the first trial.

United States v. Campbell, 410 F.3d 456, 462 (8th Cir. 2005), cert. denied, --- U.S. --, 126 S.Ct. 492 (2005)(emphasis in original); see also, United States v. Rodgers, 18

F.3d 1425, 1430 (8th Cir. 1994)(Court agrees "that there is no presumption of vindictiveness when the government chooses to indict a defendant on individual acts that arose out of the same nucleus of facts which resulted in an earlier acquittal."), quoting <u>United States v. Esposito</u>, 968 F.2d 300, 303-07 (3rd Cir. 1992).

Here, as time has shown, the State Prosecutor not only had probable cause for the escape from custody charges against the Petitioner, the Prosecutor held proof beyond a reasonable doubt.  The Petitioner cites no authority, State or Federal -- much less from the United States Supreme Court -- that a person who commits several independent crimes during the same period of time, can only be prosecuted for one, with the one prosecution serving as a free pass to commit the other offense.  Indeed, as we have detailed, Supreme Court authority is directly to the contrary.  Accordingly, even if we reached the Petitioner's Habeas claim on its merits, we would find it to be legally unavailing.  The Petitioner has advanced neither a presumptive case of prosecutorial vindictiveness, nor has he demonstrated **any** objective evidence that, in prosecuting the escape from custody charge, the State Prosecutor was being impermissibly vindictive.

In sum, finding no basis to grant the Petitioner Habeas relief, we recommend that his Petition be dismissed with prejudice.

NOW, THEREFORE, It is –

- 24 -

RECOMMENDED:

That the Petitioner's application for Habeas Corpus Relief under Title 28 U.S.C. §2254 [Docket No. 1] be dismissed with prejudice.

Dated:  March 23, 2007                        *s/Raymond L. Erickson*
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

### N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **April 9, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 9, 2007**, unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.